# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 17-803V

| | |
|---|---|
| CHARLES RANDALL, | TO BE PUBLISHED |
| Petitioner, | Special Master Katherine E. Oler |
| v. | Filed: July 30, 2019 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Attorneys' Fees & Costs; Reasonable Basis; Tetanus-diphtheria (Td) vaccine; Miller-Fisher syndrome (MFS); Guillain Barré syndrome (GBS) |
| Respondent. | |

*Jessica Olins*, Maglio Christopher & Toale, PA, Sarasota, FL for Petitioner.

*Lisa A. Watts*, U.S. Department of Justice, Washington, D.C., for Respondent.

### DECISION ON FINAL ATTORNEYS' FEES AND COSTS[1]

On June 14, 2017, Charles Randall ("Petitioner") filed a petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program")[2] alleging that he suffered from the Miller-Fisher variant of Guillain-Barré syndrome ("MFS/GBS"), as a result of the tetanus-diphtheria ("Td") vaccine he received on September 1, 2015. Pet., ECF No. 1. On March 25, 2019, Petitioner filed a Motion for Decision Dismissing Petition, ECF No. 27, and I issued a decision dismissing the petition for insufficient proof on March 27, 2019, ECF No. 28.

---

[1] This Decision will be posted on the Court of Federal Claims' website. **This means the ruling will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). If, upon review, I agree that the identified materials fit within this definition, I will redact such material from public access. Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

On March 28, 2019, Petitioner filed a Motion for Attorneys' Fees and Costs. Fees App., ECF No. 29.  Petitioner requests attorneys' fees in the amount of $15,345.20 and costs in the amount of $1,457.96, for a total of **$16,803.16**. *Id.* at 1-2.  In compliance with General Order No. 9, Petitioner submitted a statement representing that "Petitioner did not incur costs related to the litigation of this matter." Ex. 20, ECF No. 29-3.  Respondent submitted his response on April 10, 2019 opposing the motion. Fees Resp., ECF No. 30.  For the reasons set forth below, Petitioner's motion for attorneys' fees and costs is **GRANTED IN FULL**.

## I.     Petitioner's Medical History

Petitioner was 71 years of age at the time of the vaccination at issue, and had a past medical history that included glaucoma, chronic blindness in the left eye, coronary artery disease, myocardial infarction with stent placement, and hypertension. Ex. 2 at 6; Ex. 3 at 8.  Petitioner received a Td booster, the allegedly causal vaccination, on September 1, 2015, Ex. 1, after sustaining first and second degree burns to his face and upper extremities, Ex. 10 at 73-76.  Petitioner was seen several times throughout September 2015 for follow-up appointments relating to his burn injuries. Ex. 4 at 6-53. Separately, at a glaucoma check-up appointment on September 21, 2015, Petitioner reported a slight decrease in vision without pain. Ex. 17 at 25. Petitioner was next seen at the Gossage Eye Institute on September 29, 2015 complaining of pain and watering in the left eye. Ex. 6 at 11. He was treated for conjunctival and corneal abrasion, and was seen for follow-ups on October 8 and 15, 2015. *Id.* at 5-10.

On November 2, 2015, Petitioner was seen at the Hillsdale Community Health Center complaining of sudden onset headache, dizziness, difficulty walking, blurry vision, nausea, and generalized weakness that began the previous day. Ex. 10 at 6-27.  Petitioner's history indicated left-eye blindness since childhood and bilateral glaucoma. *Id*. at 14.  Despite being able to detect light, his right eye was immobile and no extraocular movement could be realized. *Id*.  A CT angiogram of Petitioner's head revealed a 2mm aneurysm of the right supraclinoid internal carotid artery and he was transferred to Borgess Medical Center ("BMC") for further evaluation. Ex. 5 at 48-50.  Petitioner was admitted at BMC from November 3, 2015 until November 11, 2015. Ex. 2 at 5-13; Ex. 5 at 49-52.  A neurologic examination showed bilateral oculomotor paralysis. Ex. 2 at 6.  Lab tests revealed elevated protein in his cerebrospinal fluid, elevated erythrocyte sedimentation rate, and positive ganglioside antibodies. Ex. 2 at 6, 25, 39, 47. Petitioner was diagnosed with MFS/GBS, and received a five-day course of intravenous immunoglobulin ("IVIG"). *Id.* at 5-7. Upon discharge, his diagnoses included oculomotor paralysis of both eyes, MFS/GBS, blurred vision in the right eye, blindness in the left eye, unsteady gait, and glaucoma. *Id.* at 5-6.

Petitioner was seen for follow-up at Michigan State University's Department of Neurology and Ophthalmology ("MSU") on December 21, 2015. Ex. 5 at 13-18.  Petitioner indicated at this visit that he had experienced a decrease in vision in his right eye three months prior (September 2015), but that his ophthalmologist told him it was within normal limits. *Id*. at 14.  The impression was opthalmoplegia and MFS/GBS with improvement following IVIG. *Id*.  On January 12, 2016, Petitioner was seen for follow-up in the Hillsdale Neurology Clinic. Ex. 7 at 2.  His exam showed full ocular motion with sensitivity to light and brisk pupillary response in the right eye. *Id*. at 2-5.  Petitioner stated that his gait had not fully recovered, and while it was noted that he had difficulty

performing a tandem gait maneuver, it was also noted that this was not unusual for someone 71 years of age. Ex. 7 at 2-5. The neurologist noted pneumococcal and shingles vaccinations in June and July 2015, but stated that while there was some literature linking those vaccines to "cross immune" reactions, it was unlikely that they would affect Petitioner in November 2015. *Id*. at 4. The Td vaccine was not mentioned. *Id*. The impression was that Petitioner had made a good recovery from presumed MFS/GBS. *Id*. at 5.

On March 21, 2016, Petitioner was seen at MSU for follow-up of his MFS/GBS, eye paralysis, and blurred vision. Ex. 13 at 2. The impression was ophthalmoplegia and MFS/GBS with near full recovery of right ophthalmoplegia. *Id*.

On May 9, 2016, Petitioner was seen by his primary care physician, Dr. Robert Schall, for a painful rash on his back and chest and was assessed with herpes zoster (shingles) without complications. Ex. 12 at 5-6, 8. The record from this visit notes "Miller-[F]isher [s]yndrome" under "Active Problems," and lists "T[dap]³ vaccine" under "Allergies." *Id*. at 5-6. Petitioner was seen for follow-up appointments on June 22, 2016, *Id*. at 9-14, December 22, 2016, *Id*. at 15-20, and June 19, 2017, *Id*. at 21-28. Each of these visits noted MFS/GBS and the Tdap vaccine allergy, but also noted that Petitioner's MFS/GBS was possibly secondary to the pneumonia or flu vaccine, as well as noting residual third nerve palsy and gait disorder from ataxia. *Id*. at 9-14, 15-20, 21-28. The physical exams noted his extraocular movements were "[a]bnormal remarkable for third nerve palsy on the right," and his gait and stance were "mildly ataxic" and "showed abnormalities." *Id*.

Petitioner was seen by Dr. Schall on August 15, 2017 for left knee and hip pain. Ex. 14 at 27-30. Again, MFS/GBS was listed as an active problem and an allergy to the Tdap vaccine was noted in the record. *Id*. The same was noted at a six-month follow-up appointment on December 19, 2017, while additionally noting the possible connection between MFS/GBS and the pneumonia or flu vaccine, the residual third nerve palsy, and the residual gait disorder from ataxia. *Id*. at 31-32. The physical exam noted abnormal extraocular movements and abnormal gait and stance. *Id*. at 34-35.

Petitioner eventually underwent surgery on his left knee on January 4, 2018. *Id*. at 14. The record from a follow-up appointment on January 11, 2018 lists "Diptheria-Tetanus-Pertuss [sic] Vacc[ine]" as an allergen, with the reaction listed as "Miller[-]Fisher [s]yndrome." *Id*. at 15.

Petitioner has semi-annual visits with his ophthalmologist for his glaucoma. The records submitted from these visits dating back to March 2015 do not mention MFS/GBS. *See generally* Ex. 17. The most recent record from April 4, 2018 shows that his vision is stable, although he does have difficulty driving at night. *Id*. at 2-7.

## II.     Procedural History

Petitioner filed medical records and his statement of completion on August 10, 2017. ECF Nos. 6-8. Respondent filed a status report on December 11, 2017 requesting additional medical records that showed Petitioner's injury lasting more than six months and Petitioner's current

---

³ Tdap refers to the tetanus, diphtheria, and acellular pertussis.

condition. ECF No. 17. Petitioner filed those additional records on February 12 and April 30, 2018. ECF Nos. 20-21. Respondent filed a Rule 4(c) Report on July 25, 2018, contesting Petitioner's right to damages and suggesting that the petition should be dismissed for lack of evidence. ECF No. 24.

On July 25, 2018, I directed Petitioner to file an expert report by September 24, 2018, which was later extended at Petitioner's request to November 26, 2018. *See* non-PDF Orders of: July 25, 2018; September 25, 2018. Petitioner filed a status report on November 26, 2018 indicating that he was not prepared to file an expert report, and that he was exploring retaining new counsel. ECF No. 26. On February 21, 2019, Petitioner informed my chambers that he intended to file a motion dismissing the petition. *See* non-PDF Order of February 25, 2019. Petitioner filed the Motion to Dismiss on March 25, 2019, ECF No. 27, and I issued a decision dismissing the case for insufficient proof on March 27, 2019, ECF No. 28. Judgment was entered on April 30, 2019. ECF No. 32.

Petitioner filed a Motion for Attorneys' Fees on March 28, 2019. Fees App. On April 10, 2019, Respondent filed a response opposing the motion on grounds that Petitioner had failed to establish a reasonable basis for the claim. Fees Resp. Petitioner filed a reply on April 16, 2019. Fees Reply, ECF No. 31.

The matter of final attorneys' fees and costs in this case is now ripe for a decision.

### III.   Parties' Arguments

Respondent argues that Petitioner has failed to establish a reasonable basis for his claim and is not eligible for an award of attorneys' fees and costs. Fees Resp. at 6. Respondent points to § 13(a)(1) of the Vaccine Act, which states that a special master may not award compensation "based on the claims of the petitioner alone, unsubstantiated by medical records or by medical opinion." *Id*. at 4. Citing the Federal Circuit's decision in *Perreira*, Respondent argues that, in a reasonable basis inquiry, "a court should look not at the likelihood of success, but instead assess the feasibility of the claim, and [P]etitioner must offer more than an unsupported assertion that a vaccine caused an injury." *Id*. at 4 (citing *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). Respondent argues that "[p]rior to accepting a case, an attorney should be able to distinguish a case that has reasonable underpinnings from one that does not." *Id*. at 5 (citing *Murphy v. Sec'y of Health & Human Servs.*, 30 Fed. Cl. 60, 62 (1993), *aff'd,* 48 F.3d 1236 (Fed. Cir. 1995)). However, Respondent points out that while conduct of counsel may be relevant on the issue of good faith,[4] it plays no role in the evaluation of whether there is a reasonable basis for the claim, and instead the analysis must focus on whether there is evidentiary support set forth in the petition. *Id*. at 5 (citing *Simmons v Sec'y of Health & Human Servs.,* 875 F.3d 632, 636 (Fed. Cir. 2017)).

Respondent argues that Petitioner's claim was based solely on a *post hoc ergo propter hoc* rationale, and that "[P]etitioner provided no objective support for his claim that the Td vaccine administered to him on September 1, 2015 more likely than not caused his MFS/GBS, and none

---

[4] Respondent does not contest the issue of good faith in this petition.

4

can be found in his medical records." Fees Resp. at 2, 5.  Additionally, Respondent asserts that the six-month sequelae of Petitioner's alleged injury have not been established. *Id*. at 6.

Petitioner replied to Respondent arguing that a reasonable basis did exist at the time the petition was filed. *See* Fees Reply. Petitioner points to various forms of evidence to support the feasibility of the claims made in the petition, including the vaccination records, medical records, affidavit, and the undisputed diagnosis following the receipt of the vaccine. Fees Reply at 6. Separately, Petitioner argues that the claim was feasible by pointing to cases where special masters found in favor of vaccine causation with the same or similar injury as that alleged in this petition.[5] *Id*.  Petitioner argues that "the fact that special masters have found in favor of vaccine causation in similar cases or a history of settlements in particular types of cases may provide a reasonable basis for filing a claim, even in the absence of a medical opinion or medical records supportive of vaccine causation." *Id*. (citing *Austin v. Sec'y of Health and Human Servs.,* No. 10-362V, 2013 WL 659574, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2013)).

Additionally, Petitioner argues that reasonable basis, if present upon filing, continues up until a negative expert review has been obtained. *Id*. at 8.  Therefore, it was reasonable for Petitioner to maintain his petition while an expert was consulted on the merits of the claim. *Id*.

Finally, Petitioner contends that the injury sequelae lasted in excess of six months. *Id*. at 3. Petitioner notes medical records dating more than two years post vaccination which indicate continued neurological symptoms and notations of possible connections between vaccines and MFS/GBS. *Id*.

## IV.  Legal Standard

Under the Vaccine Act, an award of reasonable attorneys' fees and costs is presumed where a petition for compensation is granted.  Where compensation is denied, or a petition is dismissed, as it was in this case, the special master must determine whether the petition was brought in good faith and whether the claim had a reasonable basis. § 15(e)(1).

### A. Good Faith and Reasonable Basis

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).  Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health &

---

[5] Petitioner cites *D.S. v. Sec'y of Health & Human Servs.*, No. 10-077V, 2015 WL 8409472 (Fed. Cl. Spec. Mstr. May 19, 2015) (awarding damages for MFS/GBS caused by human papillomavirus vaccine); *Goelling v. Sec'y of Health & Human Servs.*, No. 11-674V, 2015 WL 1523590 (Fed. Cl. Spec. Mstr. Feb. 13, 2015) (awarding damages for acute disseminated encephalomyelitis caused by Tdap vaccine); *Cummings v. Sec'y of Health & Human Servs.*, No. 14-721V, 2015 WL 5772278 (Fed. Cl. Spec. Mstr. Sept. 3, 2015) (awarding damages for GBS caused by influenza vaccine); *Cassandro-Green v. Sec'y of Health & Human Servs.*, No. 10-522V, 2015 WL 4734740 (Fed. Cl. Spec. Mstr. July 17, 2015) (awarding damages for GBS caused by Td vaccine).

*Human Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Human Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

Regarding the reasonable basis requirement, it is incumbent upon Petitioner to "affirmatively demonstrate a reasonable basis," which is an objective inquiry. *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 305 (2011); *Di Roma*, 1993 WL 496981, at *1. When determining if a reasonable basis exists, many special masters and judges employ a totality of the circumstances test. The factors to be considered under this test may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, No. 17-36V, 2018 WL 3032395, at *7 (Fed. Cl. June 4, 2018). This "totality of the circumstances" approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

Petitioner's counsel is expected to make a pre-filing inquiry into a claim to ensure that it has a reasonable basis. *See Turner*, 2007 WL 4410030, at *6-7. Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just Petitioner's belief in his claim. *Id*. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Human Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015). The evidence presented must be "sufficient to give the petitioner a reasonable expectation of establishing causation." *Bekiaris v. Sec'y of Health & Human Servs.*, No. 14-750V, 2018 WL 4908000, at *6 (Fed. Cl. Spec. Mstr. Sep. 25, 2018). Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Id*.

The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis because the petitioner could not meet the burden of proof needed to establish reasonable basis." *Chuisano v. United States*, 116 Fed. Cl. 276, 286 (2014). In rationalizing its decision, the *Chuisano* court highlighted *Austin* as an example of a petition that minimally crossed the required evidentiary threshold. *Id*. at 292, citing *Austin*, 2013 WL 659574, at *8. In that case, the special master found reasonable basis where only a single notation by a medical provider linked the alleged injury to the vaccination. *Austin*, 2013 WL 659574, at *8. Still, the Court in *Chuisano* emphasized the totality of circumstances test, and stated that "[a]n evidentiary standard may serve as an excellent guidepost in fee decisions, but it cannot serve as the bright-line threshold. Such a rigid position is at variance with the flexible structure of the [V]accine [P]rogram." *Chuisano,* 116 Fed. Cl. 276 at 287. While the statute does not define the standard for reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Id*.

### B. Attorneys' Fees and Costs

The Vaccine Act permits reimbursement of "reasonable" attorneys' fees and costs. § 15(e)(1). Special masters have "wide latitude in determining the reasonableness of both attorneys'

fees and costs." *Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991). The Federal Circuit has endorsed the use of the lodestar approach, in which a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The court may then make an upward or downward departure from the initial calculation based on other specific findings. *Id*. at 1348. Although not explicitly stated in the statute, attorneys' costs are also subject to a reasonableness requirement. *See Perreira*, 27 Fed. Cl. 29 at 34.

Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 484 (1993). However, Special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201. 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd* No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cl. 1993).

V.     **Discussion**

   A. **Good Faith**

Petitioner is entitled to a presumption of good faith. *See Grice*, 36 Fed. Cl. 114 at 121. Respondent has represented that they are not contesting good faith in this matter. Fees Resp. at 4. Based on my own review of the case, I find that Petitioner acted in good faith when filing this petition.

   B. **Reasonable Basis**

Respondent's objections to reasonable basis in this case rest primarily on two points, namely (1) that Petitioner provided no objective support (i.e. evidence) for his claim – in his medical records or otherwise, and (2) that Petitioner did not suffer sequelae in excess of six months. Fees Resp. at 5-6. As noted above, the standard for establishing reasonable basis is less than that required to prevail on a vaccine-injury claim. *Chuisano,* 116 Fed. Cl. 276 at 287. However, Petitioner is still required to provide some evidence of a reasonable expectation of establishing causation. *Bekiaris*, 2018 WL 4908000, at *6. For the following reasons, I find that a reasonable basis existed for filing this petition.

   1. **The Medical Record Evidence Links Td Vaccination to Injury**

Petitioner's medical records include notations that contemplate a link between his MFS/GBS and his prior vaccinations, s*ee generally* Ex. 12; Ex. 14, and specifically with his allegedly-causal Tdap vaccination, Ex. 14 at 15. Records from Petitioner's post-op appointment one week after his knee surgery in January 2018 list the "Diptheria-Tetanus-Pertuss [sic] Vacc[ine]" as an "allergen" associated with "Miller[-]Fisher [s]yndrome." Ex. 14 at 15. In the same record, "Miller[-]Fisher syndrome" is again listed under past medical history in connection with "Dtap [sic] immunization." *Id*. Notably, not only did Petitioner's medical providers associate

7

his MFS/GBS with prior vaccinations, Ex. 12 at 9-10, 16, 22; Ex. 14 at 32, there are specific notations of a connection between Petitioner's Tdap vaccination and his MFS/GBS, Ex. 14 at 15.

### 2. The Medical Record Evidence Supports Six Months or More of Sequelae

Several of Petitioner's records extending through December 2017 include a notation of MFS/GBS as an ongoing, "active problem." Ex. 12 at 9, 15, 21; Ex. 14 at 31.  These visits consistently note neurological symptoms of MFS/GBS with residual third nerve palsy and residual gait disorder from ataxia. Ex. 12 at 9-10, 14, 16, 20, 22, 27; Ex. 14 at 32.  These symptoms are apparent in Petitioner's physical exams, which indicate abnormal extraocular movements and an abnormal gait and stance. Ex. 12 at 12-13, 18-19, 24-25; Ex. 14 at 34-35.  These notations suggest that Petitioner's MFS/GBS was indeed an ongoing problem at the time of these visits, specifically 6/22/16, 12/22/16, 6/19/17, and 12/19/17 – more than two years post-vaccination. Ex. 12 at 9-14, 15-20, 21-28; Ex. 14 at 31-35.

I note that establishing a six-month period of sequelae is yet another question of medical evidence, which is but one factor in the "totality of circumstances" analysis utilized for a finding of reasonable basis. *Amankwaa*, 2018 WL 3032395, at *7.  The above-mentioned examples of medical evidence exist in the record for more than two years after the allegedly causal Td vaccination, and as such, exceed the six-month threshold.

I find that the totality of the evidence outlined above, in combination with the lower standard of proof required for establishing reasonable basis, was sufficient to provide Petitioner with a reasonable basis to file this petition.

## VI.   Awarding Attorney's Fees and Costs

Petitioner requests a total of $16,803.16 in attorneys' fees and costs. Fees App. at 2.

### A. Reasonable Attorney's Fees

Petitioner requests a total of $15,345.20 in attorneys' fees for the eight paralegals and three attorneys who contributed to this case. Ex. 18 at 12.

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11).  In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348.  Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys

entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016).

### 1. Requested and Awarded Hourly Rates

Petitioner requests the following rates for attorneys and paralegals:

| Name | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|
| Amanda Ramos (Paralegal) | $95-$105 | $145 | $148 | n/a |
| Ana Khundzak (Paralegal) | n/a | $145 | n/a | n/a |
| Brittany Shalla (Paralegal) | $145 | n/a | n/a | n/a |
| Gricely Gonzalez (Paralegal) | $105 | n/a | n/a | n/a |
| Kimberly Dutra (Paralegal) | $135 | n/a | n/a | n/a |
| Kristin Harding (Paralegal) | n/a | $145 | n/a | $154 |
| Melissa Phillips (Paralegal) | n/a | n/a | $148 | $154 |
| Rosa Salgado (Paralegal) | n/a | n/a | $148 | n/a |
| Diana Stadelnikas (Attorney) | $359 | n/a | n/a | n/a |
| FJ Caldwell (Attorney) | $356 | $367 | $385 | $400 |
| Isaiah Kalinowski (Attorney) | $349 | n/a | n/a | n/a |

The requested rates for paralegals and attorneys are consistent with what the Maglio firm has previously been awarded. *See Shingshan Liu v. Sec'y of Health & Human Servs.*, No. 10-55V, 2019 WL 2098165 (Fed. Cl. Spec. Mstr. Apr. 19, 2019) (awarding between $75-$154/hour for paralegals and awarding $385 and $400/hour for 2018 and 2019, respectively, for FJ Caldwell); *Patel v. Sec'y of Health & Human Servs.*, No. 16-848V, 2019 WL 2296818 (Fed. Cl. Spec. Mstr. Apr. 11, 2019) (awarding $356 and $367/hour for 2016 and 2017, respectively, for FJ Caldwell); *Peek v. Sec'y of Health & Human Servs.*, No. 17-176V, 2019 WL 2592576 (Fed. Cl. Spec. Mstr. May 21, 2019) (awarding $359/hour for Diana Stadelnikas in 2016); *Dingmann v. Sec'y of Health & Human Servs.*, No. 17-1058V, 2019 WL 2407410 (Fed. Cl. Spec. Mstr. May 14, 2019) (awarding $349/hour for Isaiah Kalinowski in 2016). These rates are also in line with the OSM Attorneys' Forum Hourly Rate Fee Schedule.[6] Thus, I find the requested rates to be reasonable.

### 2. Requested and Awarded Billable Hours

After review of the billing invoices, I find that the total hours expended on this petition were reasonable, and award them in full. Thus, I award Petitioner the requested amount for fees totaling $15,345.20.

### B. Reasonable Attorneys' Costs

Like attorneys' fees, a request for reimbursement of costs must also be reasonable. *Perreira*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Human Servs.*, 10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). Petitioner

---

[6] The fee schedules are published to the United States Court of Federal Claims website and can be found here: https://www.uscfc.uscourts.gov/node/2914.

requests $1,457.96 in attorneys' costs. Fees App. at 1. After review of all invoices and supporting documentation, I find the costs incurred in this matter to be reasonable and award them in full. Thus, I award Petitioner the requested amount for costs totaling $1,457.96.

### VII. Conclusion

Based on the foregoing, I find that Petitioner had a reasonable basis to file his petition. Accordingly, I hereby **GRANT IN FULL** Petitioner's Motion for Attorneys' Fees and Costs in the amount of **$16,803.16**. The award shall be in the form of a check jointly payable to Petitioner and Maglio Christopher & Toale, PA.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court SHALL ENTER JUDGMENT in accordance with this decision.[7]

**IT IS SO ORDERED.**

**s/ Katherine E. Oler**
Katherine E. Oler
Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.